***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to re-hear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms, with minor modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as: *Page 2 
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings.
2. Plaintiff suffered an injury by accident to her left ankle, to her left shoulder, to her neck, and to the back of her head, arising out of and in the course and the scope of her employment with Defendant on February 9, 2005.
3. An employment relationship existed between the parties on February 9, 2005.
4. Defendant was self-insured, for the purposes of meeting the requirements of the Workers' Compensation Act of the State of North Carolina, with Gallagher Bassett Services, Inc. as its servicing agent on February 9, 2005.
5. Plaintiff's average weekly wage is $354.72, yielding a compensation rate of $236.48 per week.
6. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit one (1) — North Carolina Industrial Commission forms and filings;
 b. Stipulated Exhibit two (2) — Plaintiff's medical records;
 c. Stipulated Exhibit three (3) — Plaintiff's personnel file.
7. In addition to the stipulated exhibits, Deputy Commissioner J. Brad Donovan admitted the following exhibits into evidence at the evidentiary hearing:
 a. Plaintiff's Exhibit One (1) — Interrogatory Response Number 16; *Page 3 
 b. Plaintiff's Exhibit Two (2) — Plaintiff's job search log from April 6, 2006 through November 15, 2006;
 c. Defendant's Exhibit One (1) — Interrogatory Responses.
 *********** ISSUES
The issues for determination are:
1. Whether Plaintiff's current disability, if any, is causally related to her February 9, 2005 work injury?
2. Whether Plaintiff is entitled to any additional benefits?
 ***********
Based upon the competent and the credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is currently 39 years old. Defendant employed Plaintiff as an assistant manager at its store in Atlantic Beach, North Carolina. Plaintiff's job duties as an assistant manager included waiting on customers, counting money, going to the bank, preparing daily paperwork, taking out trash, mopping floors, stocking shelves, cleaning windows, wiping shelves and counters, sweeping the parking lot, changing gas prices on the sign outside of the store by using a long stick with a suction cup, and changing the videotape, as well as performing similar maintenance, on the surveillance cameras.
2. On February 9, 2005, Plaintiff was standing on a chair changing the videotape for the surveillance camera inside the store when she fell backwards, struck her head and her neck *Page 4 
on the steel door to the office, and then fell to the floor. As a result, Plaintiff suffered injuries to her left ankle, to her left shoulder, to her neck, and to the back of her head.
3. Shortly after the fall, Plaintiff presented to Carteret General Hospital, where Dr. Nancy Nai-Hsin Sun diagnosed Plaintiff with a muscle strain, prescribed Ibuprofen, 600 milligrams, every six (6) hours, and ordered that Plaintiff remain out of work until February 11, 2005.
4. Plaintiff followed up with Dr. Michael Allen Gray at Carteret UrgentCare Center on March 4, 2005, at which time Dr. Gray diagnosed Plaintiff with a cervical strain, administered a steroid injection, but felt that she could work without restrictions. However, on March 10, 2005, Dr. Gray restricted Plaintiff to working four (4) hours per day, with no lifting over 10 pounds over the next week.
5. On April 13, 2005, Plaintiff presented to Dr. Matthew Neal Leyton of Coastal Physical Medicine Rehabilitation Services in New Bern, North Carolina. Dr. Leyton diagnosed Plaintiff with a cervical strain and cervical radiculitis, and ordered that Plaintiff remain out of work until he could review the results of cervical magnetic resonance imaging (MRI) that he ordered. Plaintiff underwent the MRI on April 17, 2005, which was normal. Thereafter, Dr. Leyton released Plaintiff to return to light-duty work.
6. The part-time, light-duty position that Defendant provided to Plaintiff was not one found in the competitive job market, as Defendant modified it to accommodate Plaintiff's work restrictions. Plaintiff's supervisor, Ms. Tammy Sue Lopez, and Defendant's district manager, Ms. Michelle Cahill Bushby, both testified that Defendant specifically modified the part-time, light-duty position being offered to Plaintiff in order to accommodate her work restrictions. Ms. Lopez and Ms. Bushby further testified that prior to Plaintiff's February 9, 2005 work injury, *Page 5 
Plaintiff worked alone in the store; however, while working in the part-time, light-duty position after Plaintiff's work injury, Defendant required another employee to be there with Plaintiff throughout the entire shift, in order to perform the tasks that were outside of her restrictions. In addition, Ms. Lopez testified that Defendant had no permanent positions that were within Plaintiff's work restrictions.
7. On June 22, 2005, Plaintiff resigned her part-time, light-duty position with Defendant in order to take a full-time position at Fishin' Fever in Salter Path, North Carolina, at the same hourly rate that she was making for Defendant. Plaintiff took this job because it was less physically demanding, and because she believed that it would allow her to work eight (8) hours per day instead of the four (4) hours per day that her work restrictions required with her former position with Defendant. Dr. Leyton agreed to modify Plaintiff's work restrictions, at her request, in order to allow her to work eight (8) hours per day at the new position with Fishin' Fever. Plaintiff's job duties at Fishin' Fever included running a cash register and sometimes bagging shrimp. She was able to alternate positions from sitting on a stool, to sitting in a chair, to standing, as needed.
8. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's decision to resign her part-time, light-duty position with Defendant in order to take a full-time position at Fishin' Fever in Salter Path, North Carolina, at the same hourly rate that she was making for Defendant, was justifiable, under the circumstances. The part-time, light-duty position with Defendant was "make-work," as such position could not be found in the competitive job market, and such position did not represent any type of meaningful wage-earning capacity on the part of Plaintiff. *Page 6 
9. On November 8, 2005, Plaintiff reported to Dr. Leyton that she could no longer work at Fishin' Fever, due to an increase in neck pain that prevented her from performing her family duties at home after working all day. In response, Dr. Leyton indicated in his office notes that he would attempt some changes in Plaintiff's pain medications, in order to allow her to return to work.
10. On November 30, 2005, Dr. Leyton found Plaintiff to be at maximum medical improvement, and ordered a functional capacity evaluation; however, he opined that Plaintiff was going to continue to require pain medication, trigger point injections, and possible physical therapy. By this time, Plaintiff's job at Fishin' Fever was no longer available, as the business closed.
11. On December 22, 2005, Plaintiff underwent the functional capacity evaluation. According to the functional capacity evaluator, Plaintiff "demonstrated the ability to tolerate work activities at the [l]ight work level." The functional capacity evaluation report restricted Plaintiff to lifting a maximum of 20 pounds rarely, rarely reaching with the left hand and occasionally reaching with the right hand, no overhead work, and frequent re-positioning, among several other restrictions. Further, it noted that Plaintiff "demonstrated consistent performance and cooperative behavior in this FCE. Subjective input matched objective data. This FCE is considered to be a valid and reliable representation of the client's safe work abilities."
12. On January 11, 2006, Plaintiff returned to Dr. Leyton, and he reviewed the functional capacity evaluation report with her. At that time, Dr. Leyton opined that the restrictions in the functional capacity evaluation report would be permanent. Moreover, Dr. Leyton opined, to a reasonable degree of medical certainty, that Plaintiff's February 9, 2005 *Page 7 
work injury caused the neck condition that he diagnosed and treated, and that the permanent work restrictions that he assigned to Plaintiff were the result of the work injury.
13. Thereafter, Plaintiff conducted a job search on her own, applying for work with 10 different employers; however, the prospective employers either rejected Plaintiff's job applications, based upon her permanent work restrictions, or Plaintiff simply never heard back from the prospective employers. The Full Commission finds, based upon the greater weight of the evidence, that this job search that Plaintiff conducted was reasonable, under the circumstances.
14. Prior to the hearing before the Deputy Commissioner, Defendant retained the services of vocational rehabilitation counselor Mr. Michael John Stickney, in order to prepare a job market survey. Mr. Stickney performed a job market survey for the period between April 12, 2007 and April 17, 2007, and identified 14 potential job positions, nine (9) of which he obtained from the North Carolina Employment Security Commission (hereinafter referred to as ESC) website. Mr. Stickney opined that since these nine (9) job positions were within Plaintiff's permanent work restrictions, then they were examples of suitable employment; however, the ESC refused to provide Mr. Stickney with any of the details concerning the specific duties for these nine (9) job positions.
15. Plaintiff went to the ESC to apply for the nine (9) job positions identified by Mr. Stickney; however, when Plaintiff presented her permanent work restrictions to ESC employee Mr. Don Williams, Mr. Williams refused to allow her to apply for any of these positions, advising Plaintiff that they were all outside of her permanent work restrictions. Plaintiff also applied for four (4) of the remaining five (5) job positions listed by Mr. Stickney, but all of these prospective employers rejected her job applications, based upon her permanent work restrictions. *Page 8 
The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's attempts to follow up with the job leads identified by Mr. Stickney were reasonable, under the circumstances.
16. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff suffered a compensable injury by accident arising out of and in the course and the scope of her employment with Defendant on February 9, 2005. As a direct result of Plaintiff's February 9, 2005 work injury, Plaintiff suffered injuries to her left ankle, to her left shoulder, to her neck, and to the back of her head, thereby rendering Plaintiff temporarily and partially disabled from her employment with Defendant from March 10, 2005 through April 12, 2005, and from April 23, 2005 through June 22, 2005, when Plaintiff performed the part-time, light-duty position provided by Defendant. Plaintiff became temporarily and totally disabled from employment on November 8, 2005, when Plaintiff became no longer able to work at Fishin' Fever, due to an increase in neck pain, resulting from her February 9, 2005 work injury, and thereafter was unable to find any employment within her permanent work restrictions, despite reasonable efforts. Plaintiff remains temporarily and totally disabled from employment to the present, due to her continued inability to find any employment within her permanent work restrictions, despite reasonable efforts.
17. Although Plaintiff reached maximum medical improvement, Plaintiff continues to require ongoing medical treatment, including the prescribing of and the monitoring of her medication regime, trigger point injection therapy, and possible physical therapy.
 ***********
Based upon the foregoing stipulations and upon the foregoing findings of fact, the Full Commission makes the following: *Page 9 
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident arising out of and in the course and the scope of her employment with Defendant on February 9, 2005. As a direct result of Plaintiff's February 9, 2005 work injury, Plaintiff suffered injuries to her left ankle, to her left shoulder, to her neck, and to the back of her head. N.C. Gen. Stat. § 97-2(6) (2007).
2. Plaintiff's decision to resign her part-time, light-duty position with Defendant in order to take a full-time position at Fishin' Fever in Salter Path, North Carolina, at the same hourly rate that she was making for Defendant, was justifiable, under the circumstances. The part-time, light-duty position with Defendant was "make-work," as such position could not be found in the competitive job market, and such position did not represent any type of meaningful wage-earning capacity on the part of Plaintiff. Saums v. Raleigh Community Hosp., 346 N.C. 760, 487 S.E. 2d 746 (1997); Peoples v. Cone Mills, 316 N.C. 426, 342 S.E.2d 798
(1986).
3. Plaintiff became temporarily and partially disabled from her employment with Defendant from March 10, 2005 through April 12, 2005, and from April 23, 2005 through June 22, 2005, when Plaintiff performed the part-time, light-duty position provided by Defendant. N.C. Gen. Stat. § 97-30 (2007).
4. Plaintiff became temporarily and totally disabled from her employment with Defendant from April 13, 2005 through April 22, 2005, when Dr. Leyton ordered that Plaintiff remain out of work until he could review the results of the MRI that he ordered. N.C. Gen. Stat. § 97-29
(2007). Plaintiff again became temporarily and totally disabled from her employment from November 8, 2005, when Plaintiff became no longer able to work at Fishin' Fever, due to an increase in neck pain, resulting from her February 9, 2005 work injury, and thereafter was unable to find any employment within her permanent work restrictions, despite reasonable *Page 10 
efforts, under the circumstances. Id.; Russell v. Lowes ProductionDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Plaintiff remains temporarily and totally disabled from employment to the present, due to her continued inability to find any employment within her permanent work restrictions, despite reasonable efforts, under the circumstances. Id.
5. Plaintiff is entitled to have Defendant pay for medical expenses incurred or to be incurred as a result of her February 9, 2005 work injury, as may be required to effect a cure, to give relief, and/or to lessen Plaintiff's period of disability. N.C. Gen. Stat. § 97-25 (2007).
 ***********
Based upon the foregoing stipulations, upon the foregoing findings of fact, and upon the foregoing conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendant shall pay temporary partial disability compensation to Plaintiff, pursuant to N.C. Gen. Stat. § 97-30 of the North Carolina General Statutes, at the rate of two-thirds (2/3) percent of the difference between Plaintiff's average weekly wage before the February 9, 2005 work injury and the actual wages Plaintiff earned from March 10, 2005 through April 12, 2005, as well as from April 23, 2005 through June 22, 2005, when Plaintiff performed the part-time, light-duty position provided by Defendant. The accrued compensation shall be paid in a lump sum to Plaintiff.
2. Also subject to a reasonable attorney's fee herein approved, Defendant shall pay temporary total disability compensation to Plaintiff at the rate of $236.48 per week for the period from April 13, 2005 through April 22, 2005, when Dr. Leyton ordered that Plaintiff remain out of work until he could review the results of the MRI that he ordered. Defendant shall also pay temporary total disability compensation to Plaintiff for the period from November 8, 2005, when *Page 11 
Plaintiff became no longer able to work at Fishin' Fever, and continuing thereafter, until further Order of the North Carolina Industrial Commission. The accrued compensation shall be paid in a lump sum to Plaintiff.
3. A reasonable attorney's fee of 25 percent of the compensation awarded to Plaintiff in paragraph one (1) and in paragraph two (2), above, is hereby approved to be deducted from the lump sums due Plaintiff for accrued compensation and thereafter, every fourth (4th) payment due Plaintiff shall be paid directly to Plaintiff's counsel.
4. Plaintiff is entitled to have Defendant pay for medical expenses incurred or to be incurred as a result of her February 9, 2005 work injury, as may be required to effect a cure, to give relief, and/or to lessen Plaintiff's period of disability. N.C. Gen. Stat. § 97-25 (2007).
5. Defendant shall pay the costs of these proceedings.
This the ___ day of September 2008.
 S/___________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1